McAdam, J.
The plaintiff owns a collection of specimens, numbering 2,500, valued at $50.000, which has for twenty years been on exhibition in this city and London, under the name of “ Dr. Kahn’s Museum of Anatomy ” and “ Dr. Kahn’s Anthropological Mu *378 seum.” The defendant, Strassburger, is the owner of about ioo models, which he has offered at private sale for $400, and is now offering at auction by means, of advertisements and circulars, describing them as “ lately forming the major part of Dr. Kahn’s celebrated museum of Anatomy,” and the object of the suit is not to enjoin the sale, but to restrain the defendants from selling the Strassburger models as part of Dr. Kahn’s collection, on the ground that such a sale would deceive the public and cause the plaintiff irreparable damage by deteriorating the value of his property.
The facts are not denied, and the plaintiff on equitable principles is entitled to the relief prayed for. To illustrate: It is evident that the owner of an inferior lot of horses would not be allowed to auction off the animals as forming the major part of Bonner’s, Lorillard’s, Belmont’s or other well known stables, if the statement was without truth, for the reason that it would injure the proprietors of these stables, the scope and extent of which would be incapable of proof in an action by them for damages. Next, it would deceive the public, induce persons to buy who otherwise might not, and to offer prices becoming the celebrity of the stables to which the horses were fraudulently represented to belong. The same rule would apply to works of art and the like, where the celebrity of the artist, collector or owner lends character and value to the subject of the sale (by analogy see Hoffman's Prov. Rem. 236, et. seq.) Property offered at auction must be truthfully described. Any other mode is fraudulent and may be denominated a Peter Funk ” sale, with all that term implies. The auctioneers have evidently been imposed upon, and they are made parties to apprise them of the true state of facts.
The motion to continue the temporary injunction must be granted.
*379 Note on Injunctions against Publications Infringing on Privacy or Affecting Character or Reputation.
Pollard v. Photographic Co., 40 Ch. D. 345 (1888). A photographer who had taken negative likeness of a lady to supply her with copies for money, was restrained from selling or exhibiting copies both on the ground that there was an implied contract not to use the negative for such purposes, and also upon the ground that such sale or exhibition was a breach of confidence which a court of equity considered as wrong and would prevent, although there was no injury to property in respect to which damages could be recovered in an action at law.
Clark v. Freeman, 11 Beav. 112 (1848). Injunction to prevent a chemist from selling a quack medicine under a false representation that it was a medicine of the plaintiff, an eminent physician. Refused on the ground that it would be staying the publication of a libel.
Routh v. Webster, 10 Beav. 561 (1847). Where a prospectus of a company contained without authority plaintiff’s name as a trustee, the defendants were restrained “ from printing, publishing or circulating any prospectus or other document of, or relating to a certain company called the Economical Conveyance Company, mentioned and referred to in the plaintiff’s bill in this cause, with plaintiff’s name thereto, and from in any manner using the name of the plaintiff so as to identify him as a party interested or associated with the said company."
Prince Albert v. Strange, 1 McN. & G. 25 (1849). An author or composer of an unpublished work kept for his private use, has a right to withhold the same from the knowledge of others, and the court will interfere to prevent the invasion of this right by the publication of a catalogue containing a description of such work.
Gee v. Pritchard, 2 Swanst. 402 (1818). The publication of private letters may be restrained on the ground of property in the writer, but not merely because they were written in confidence and their publication would wound feelings.
Hoyt v. MacKenzie, 3 Barb. Ch. 320. Although it may be evident that the publication of private letters is with the view of wounding the feelings of individuals or of gratifying a perverted public taste, a court of equity has no jurisdiction to restrain their publication when they are of no value as literary property.
Following Wetmore v. Scovell, 3 Edw. Ch. 515.
*380 Woolsey v. Judd, 11 How. Pr. 49; s. c., 4 Duer, 379. The publication of private letters without the consent of the sender will be restrained whether the letters possess any literary merit or not, on the ground that the sender has exclusive right to publish them, unless their publication is necessary in order to justify the receiver.
[Hoyt v. MacKenzie, 3 Barb. Ch. 320; Wetmore v. Scovell, 3 Edw. Ch. 515 ; disregarded after review of authorities.]
Coleman v. West Hartlepool Ry. Co., 8 W. R. 734 (1860). Pending litigation the Court will restrain a publication by one of the parties of a garbled account of the dispute calculated to prejudice the case of their opponent.
Kilcat v. Sharp, 52 L. J. N. S. Ch. 134 (1882). In an action for fraudulent representations contained in letters and circulars the defendant was restrained upon plaintiff’s motion from publishing the statement of claim with marginal notes of a strong character so tending to interfere with a fair trial of the action and as a contempt of court.
Life Asso. v. Boogher 3 Mo. App. 173. An injunction will not lie to restrain the publication of the libel. Courts have no power to suspend or abridge the right of every person to “ freely speak write or print on any subject.”
Du Post v. Beresford, 2 Camp. 511 (1810). Trespass for destroying a picture publicly exhibited, the court directed as it was a libel on defendant’s sister it could not be considered a work of art and that plaintiff, could recover only the mere value of the canvass.
Lord Ellenborough said: “ Upon application to the Lord Chancellor he would have granted an injunction against the exhibition.”
[Lord Ellenborough’s remark is criticised in page 7.]
Liverpool Asso. v. Smith, 37 Ch. D. 170. Injunction to restrain future articles reflecting unfavorably on a company refused on the ground of the difficulty of granting an injunction which would not include matters that might turn out not to be libellous, and because if the injunction was granted in terms to restrain what was libellous, the question of libel or no libel would have to be tried in a very unsatisfactory way on motion to commit.
Mulkern v. Ward, L. R. 13 Eq. (cases) 619 (1872). An alleged libel contained in a book a literary work and not a mere advertisement or publication of an alleged fact refused. Distinguishing Dixon v. Holden, L. R. 7 Eq. 488, the court observing that it should have considered it perfectly well settled that a court of chancery *381 would not restrain the publication of a libel but for the case mentioned,
Brandreth v. Lance, 8 Paige (N. Y.) 24. In sustaining a demurer to a bill seeking an injunction to restrain the libellous publication purporting to give a history of plaintiff’s life. Chancellor Walworth says: “ It is very evident that this court cannot assume jurisdiction of the case presented by the complainants’ bill or of any other case of like nature without infringing on the liberty of the press and attempting to exercise a power of preventative justice which, as the legislature has decided cannot safely be entrusted to any tribunal consistently with the principles of a free government (2 R. S. § 737 ; and Revisors note). This bill presents the simple case of an application to the court of Chancery to restrain the publication of a pamphlet which purports to be a literary work undoubtedly a tale of fiction on the ground that it is intended as a libel upon the complainant. The court of Star Chamber in England once exercised the power of cutting off the ears, branding the foreheads and slitting the noses of libellers of important personages (Hudson’s Star Chamber 2 collect, Jurid, 224). And as an incident to such a jurisdiction that court was undoubtedly in the habit of restraining the publications of such libels by injunction. Since that court was abolished, however, I believe that there is but one case upon record in which any court either in this country or in England has attempted by an injunction or order of the court to prohibit or restrain the publication of a libel as such an anticipation. In the case to which I allude the notorious Scroggs chief justice of the Court of Kings Bench and his associates decided that they might be safely intrusted with the power of prohibiting and suppressing such publications as they might deem to be libellous . . . The house of Commons, however, considered this extraordinary exercise of power on the part of Scroggs as a proper subject of impeachment.
N. Y. Juvenile Guardian Soc. v. Roosevelt, 7 Daly (N. Y.) 188. A court of equity has no authority to restrain a libellous publication ; the exercise of any such jurisdiction being repugnant to the provision of the constitution, which declares {Act. 1, §8), that every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right.
Prudential Insurance Co. v. Knott, E. L. R. 10 Chanc. App. 142. (1875). Bill by a life insurance company to restrain the issuing of a pamphlet, containing false statements as to the company’s financial condition and management. Held, the court had no *382 jurisdiction to restrain the publication of a libel even if it is injurious to property.
Cairns, L. C. says: “ The comments and expressions in this pamphlet either do amount to a libel upon the company, or do not. If they do not amount to a libel and are therefore innocuous and justifiable in the eyes of a court' of common law, I am at a loss to understand upon what principle the court of chancery could possibly interfere as a censor morum or critic to restrain the publication of statements or expressions which would be held justifiable in a court of common law. If, on the other hand, those comments do amount to a libel then as I have always understood, it is clearly settled that the court of chancdry has no jurisdiction to restrain the publication, merely because it is a libel. [Disapproving, Dixon v. Holden, L. R. 7 Eq. 488 and Springhead S. Co. v. Riley, L. R. 6 Eq. 561.]
Hill v. Hart Davies, 21 Ch. D„ 798 (1882). On motion in behalf of the trustees of a society, an injunction was granted restraining he issuing of a circular containing false statements as to the society's financial condition, or any other circular containing false or inaccurate representations as to the credit or financial condition of said society.
Raymond v Russell, 143 Mass., 295 ; s. c., 9 Eastern Rep. 382. Bill to restrain a mercantile agency from publishing plaintiff’s name in their book purporting to give the names and standing of merchants. On sustaining demurrer held that it was not within the jurisdiction of a court of equity to restrain by injunction representations as to the character and standing of plaintiff, or as to his property although such representations may be false, if there is no breach of trust or of contract involved.
Greene v. U. S., etc. Asso., 39 Hun 300. In an action brought to restrain the publication of a libel to the effect that the plaintiff neglects and refuses to pay his just debts, a temporary injunction during the pendency of the action will not be granted, unless the falsity of the charge is proved.
Dixon v. Holden, L. R. 7 Eq. 488 (1869). Upon hearing of the cause, publication of a notice stating that plaintiff was a partner in a bankrupt firm, restrained on the ground that plaintiff's business reputation was property which a court of chancery would protect.
Loog v. Bean, 26 Ch. D. 306 (1884). Holding the court had jurisdiction to restrain a person from making slanderous statements among the customers of a merchant as to the latter’s finan *383 <cial condition, there being no distinction between libel and slander in this respect.
Kidd v. Horry, 28 Fed. Rep. 773. (U. S. Circuit Court E. D., Pennsylvania). Injunction to restrain defendants from publishing certain circular letters which were alleged to be libelous and injurious to the patent rights and business of complainants, refused on the ground that the court did not have jurisdiction to issue such an injunction.
The court say: “ The application seems to be altogether a novel one and is urged principally upon a line of recent English authorities such as Dixon v. Holder, L. R. 7 Eq. 488, Thorley’s Cattle Food Co. v. Massam, 14 Ch. Div. 763; Thomas v. Williams id. 864, and Loog v. Bean, 26 Ch. Div. 306. An examination of these and other cases relied on, convinces us that they depend on certain peculiar acts of parliament of Great Britain and not on the general principles of equity jurisprudence. By the common law procedure act of 1854 (17 & 18 Viet. c. 125 §§§ 79, 81, 82), it was provided that in all cases of breach of contract or other injury where the party injured is entitled to maintain and has brought an action he may . . . . claim a writ of ‘injunction against the repetition or continuance of such breach of contract or other injury, etc.; and “ in such action judgment may be given that the wait of injunction do or do not issue as justice may require. And further (section 82) the plaintiff may at any time after the commencement of his action apply ex parte for an injunction. This statute gave to the judges of the common law courts the power to issue injunctions in the cases specified (i. e., breaches of contract or other injury) to prevent a repetition or continuance of the injury for which the suit was brought.
By the judicature act of 1873, 36 & 37 Viet. c. 66 § 16, it was enacted that the high court of justice should have and exercise “ the jurisdiction which at the commencement of this act was vested in, or capable of being exercised by all or any one or more of the judges in [the common law] courts.”
But neither the statute law of this country nor any well considered judgment of the courts has introduced this new branch of equity into our jurisprudence.
Baltimore Car Wheel Co. v. Bemis, 29 Fed. Rep. 95.
Boston Diatite Co. v. Florence Mfg Co., 114 Mass., 69. In a suit to enjoin false and malicious representations charging an infringement of a patent, Held, the jurisdiction of a court of chancery does not extend to cases of libel and slander, or of false representations as *384 to the character or quality of plaintiff’s property, or as to his title thereto, which involve no breach of trust or of contract,
Whitehead v, Kitson, 119 Mass. 484. A court of equity has no, jurisdiction to entertain a bill by a patentee of an invention for an injunction against a person falsely representing that the plaintiff’s, patent infringes upon a patent owned by himself and thereby detering others from purchasing the plaintiff's invention.
[Citing Boston Diatite Co. v. Florence Mfg Co., 114 Mass. Prudential Ass. Co. v. Knott, L. R. 10 Ch., 42.]
Consumer’s Gas Co. v. Kansas City Gaslight etc. Co., 100 Mo. 501; s. c., 29 Am. Eng. Corp. Cas. 251, Equity will not intervene by injunction or otherwise to prevent one from asserting a claim of exclusive privilege on the manufacture and sale of a commodity where there is no interference with the property of the complainant other than the claim of such exclusive privilege; as it has no jurisdiction to prevent a mere slander of title.
[Citing Whitehead v. Kitson, 119 Mass. 484; Boston Diatite Co. v. Florence Mfg Co. 114 Id. 69.
Halsey v. Brotherhood, 19 Ch. D. 386 (1879). An action for an injunction to restrain the issuing of notices against the purchasing of certain articles cannot be maintained upon a mere charge that the notices are untrue without alleging that they were issued in bad faith.
Hammersmith Co. v. Dublin Co., 10 Ir. R. Eq., 235. The court of chancery refused an injunction to restrain the defendant’s from continuing to publish statements that the skates about to be introduced by plaintiff’s were an infringement of the defendant’s patent.
There is no jurisdiction to restrain a publication whether libellous, or not merely because it may tend to injure property,
[Citing Prudential Ass. Co. v. Knott L. R. 10 Ch. App. 142.]
Meyer v. Devries 64 Md. 532. In this case the circuit court, enjoined defendants from further publication and dissemination of a statement purporting to be an abstract of a bill of complainant charging an infringement of a trade mark. An appeal having been taken only from an order modifying such injunction, the appelate court did not consider the propriety of granting it.
Croft v. Richardson, 59 How. Pr. 356 (Super. Ct. Sp. T.). Publication of a circular charging plaintiff’s with infringement of defendant’s patent and stating that plaintiff’s were irresponsible and hoped to make considerable profit before legal proceedings were taken *385 and that their efforts in that direction were nefarious. Restrained as a false and malicious libel concerning plaintiffs business.
Mauger v. Dick, 55 How. Pr. 132. (N. Y. Super. Ct.). An equitable action cannot be maintained to restrain the publishing and issuing of a circular by defendant falsely stating that his trade-mark was being infringed, where plaintiff’s name was not mentioned in the circular although he used the trade-mark.
Thomas v. Williams, 14 Ch. D. 864. (1880). Where a circular had been issued charging a manufacturer in effect with the making of spurious goods in imitation of another, the court granted a perpetual injunction restraining the defendants from issuing the circular, and from in any manner representing or suggesting that goods made by plaintiff are imitation of the goods made by the person whom the circular charged plaintiff with imitating.
Thorley’s Cattle Food Co. v. Massam, 6 Ch. D. 582 (1871). Upon motion for an injunction to restrain the issuing of an advertisement containing false representations calculated to injure the plaintiff’s trade, the court was of the opinion that notwithstanding the decision to Prudential Assurance Co. v. Knott L. R. 10 Ch. 142, the court had power under the judicature act of 1873 to restrain the publication of such advertisement but declined to exercise its power upon an interlocutory application.
Emack v. Kane, 34 Fed. Rep. 46 (U. S. Circuit Ct. N. D. Ill.) A court of equity has jurisdiction to restrain an attempted intimidation by one issuing circulars threatening to bring suits for infringements against persons dealing in a competitor’s patented article, the bill charging and the proofs showing that the charges of infringement were not made in good faith, but with a malicious intent to injure complainant’s business.
Disty Kidd v. Harry, 28 Fed. Rep. 773.
Chase v. Tuttle, 27 Fed. Rep. 190. (U. S. Circuit Ct. N. D. of N. Y.) An injunction to restrain defendants use of circulars charging infringement of their patent by complainant, and threatening the trade with infringement suits where the question of infringement had never been decided and where it was not shown that the statement of the defendant were false or fraudulent.
The court doubted its jurisdiction to issue such injunction in any case.
Bell v. Singer Co., 65 Ga. 452. A court of equity has the power to enjoin the publication and circulation of libel, but the court under the circumstances in its discretion refused to exercise its *386 power to restrain the issuing of a circular charging plaintiff with an infringement of a patent and threatening purchasers of his machine with legal proceedings.
Rollins v. Hinks, L. R. 13 Eq. 355 (1872). On motion the publication of statements for the purpose of preventing the sale of an alleged infringement of a patent by threatening purchasers with legal proceedings restrained where the person causing the statements to be made had no bona fide intention of following up his threats.
[Citing Dixon v. Holden, L. R. 7 Eq. 488.]
S. P. Axmann v. Lund, L. R. 18 Eq. 330, 1874.
Humphrey’s Homeopathic Med. Co. v. Bell, 16 State Rep. 610; s. c. 2 N. Y. Supp. 50. A person who had been with a medicine company as manager of its finances and business only, having had nothing to do with laboratory, was restrained, on his having set up an opposition business for himself, from advertising himself as the late manager of the medicine company.
Springhead S. Co. v. Riley, L. R. 6 Eq. 561. Officers of a trades-union may be restrained from issuing placards to workmen not to hire themselves to plaintiff on the ground that such an act is a crime and tends to injure plaintiff’s property by preventing' him from continuing his business.
Liverpool Asso. v. Smith, 37 Ch. D. 170; s. c. 27 Am. L. Reg. 493. Since -the passing of the judicature act the court has jurisdiction to restrain by interlocutory injunction the publication of a trade libel,but as, if it grant the injunction, it must pronounce the publication to be libelous before it has been found so by a jury, the jurisdiction is to be exercised only in the clearest cases where any jury would find the matter complained of to be libelous; and where, if they found otherwise, their verdict would be set aside as unreasonable.
Quartz Mill, etc. Co. v. Beall, 20 Ch. D. 501 (1882). A company commenced an action for damages and to restrain the further publication of a circular reflecting on its promoters and directors. Held, although the court had jurisdiction to grant an interlocutory application to restrain a libel, it was to be exercised with great caution, and not unless the court was satisfied that the statements in the documents were untrue.
The court say: “ Had this been the case of an injunction at the hearing and not upon an interlocutory application, I should have been very much disposed to think that it was within the jurisdic *387 tion of the court of chancery under the old practice. The circular is one, the allegations of which, if untrue, are calculated to injure the company in their course of trade, and I am inclined to think, therefore, that it will come within that class of cases where the court interfered at the hearing of the cause, but not on interlocutory application."